UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY CAVETTE,

       Plaintiff,                      CIVIL ACTION NO. 07-12007

       v.                              DISTRICT JUDGE BERNARD A. FRIEDMAN

COMMISSIONER OF                MAGISTRATE JUDGE VIRGINIA M. MORGAN
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This Social Security case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated below, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that plaintiff's motion for summary judgment be **DENIED**, and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

### II. Background

On January 29, 2004, plaintiff filed an application for Social Security Disability Insurance Benefits (DIB), alleging that he was disabled due to extreme upper back pain and pain in his right groin, right hip and right leg caused by his damaged spine and herniated discs, with a disability onset date of February 7, 2003. (Tr. 46-48, 52) Plaintiff graduated high school, and

has a work history including employment as a construction technician for a telephone company. (Tr. 58, 72)

The Social Security Administration (SSA) denied plaintiff's claim on March 8, 2004. (Tr. 31-35) Plaintiff then requested a hearing before an administrative law judge (ALJ). (Tr. 36) A hearing was held on March 2, 2006, before ALJ John Christensen. Plaintiff, represented by counsel, appeared and testified at the hearing. (Tr. 370-397) The ALJ also took testimony from a Vocational Expert ("VE").

On August 21, 2006, the ALJ issued a written decision denying plaintiff's claim. (Tr. 14-23) The ALJ first determined that plaintiff had the following impairments: "moderate central to right para-central disc protrusion at T7-T8, status post right shoulder depression and multiple disc bulges in the lumbar spine." (Tr. 22) The ALJ also determined that plaintiff's impairments were "severe" within the meaning of 20 C.F.R. § 404.1520(a)(4)(ii), but that he did not have an impairment that met or equaled any of the impairments listed in Appendix 1, Subpart P of the Social Security regulations. (Tr. 22) The ALJ further determined that plaintiff had the residual functional capacity (RFC) to perform "light work with no climbing of ropes, ladders and scaffolds, with no use of either upper extremity for more than occasional non-repetitive reaching, handling, grasping and fingering with no overhead reaching or use of vibrating tools." (Tr. 23) In light of plaintiff's RFC, vocational factors and the VE's testimony, the ALJ determined that, while plaintiff could not perform his past relevant work, plaintiff could perform the requirements of jobs that exist in significant numbers in the national economy. (Tr. 23) Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act. (Tr. 23) Plaintiff was 48 years-old at the time of the ALJ's decision. (Tr. 17)

On August 22, 2006, plaintiff filed a request for review of the ALJ's decision with the SSA's Appeals Council. (Tr. 10) The Council denied the request on April 12, 2007. (Tr. 5-7) The ALJ's decision thus became the final determination of the Commissioner.

On May 8, 2007, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). As noted above, the matter comes before the court on the parties' cross-motions for summary judgment. Plaintiff contends in his motion that the ALJ formed an inaccurate hypothetical question after incorrectly assessing plaintiff's credibility. The Commissioner contends that ALJ's decision is supported by substantial evidence and should thus be affirmed.

### III. Legal Standards

#### A. Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that he is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB claims. 20 C.F.R. § 404.1520. In Foster, 279 F.3d at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

**B. Standard of Review**

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that

"[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

## IV. Analysis

At the hearing, the ALJ posed a hypothetical question to the VE regarding the ability of an individual of plaintiff's age, education, work experience, and RFC to engage in substantial gainful activity. Specifically, the ALJ asked the VE to assume a person:

> of the same age, education, and work experience as the Claimant. That individual has the following residual functional capacity. That would be to do light work, no climbing ropes, ladders, or scaffolds, only occasional climbing ropes and stairs. No more than occasional nonrepetitive movement of head and neck from side to side, or up and down. No use of either upper extremity for more than occasional nonrepetitive reaching, handling, grasping, or fingering. No overhead reaching, no use of vibrating tools. [Tr. 391]

In response to the hypothetical, the VE testified that the hypothetical person could perform light work[1] jobs such as a gate guard (approximately 9,000 jobs in the state of Michigan) and usher (approximately 4,000 jobs in the state of Michigan). (Tr. 391-392) With respect to sedentary

---

[1]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

work[2], the VE testified that plaintiff could work at such jobs as a surveillance system monitor (approximately 1,500 jobs), an inspector (approximately 1,900 jobs), and a telemarketer (approximately 5,300). (Tr. 392-393) On the basis of that testimony, the ALJ concluded that plaintiff was not disabled.

Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates a claimant's physical and mental limitations, and the VE testifies that a person with such limitations is capable of performing a significant number of jobs in the national economy, such testimony is sufficient to support a finding that the claimant is not disabled. Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987). Conversely, where the hypothetical does not paint an accurate picture of the claimant's limitations, the VE's testimony cannot support such a finding. The ALJ is not required to specifically refer to a claimant's medical conditions in the hypothetical. Webb v. Commissioner of Social Security, 368 F.3d 629 (6th Cir. 2004). Further, the ALJ is not required to include in a hypothetical unsubstantiated allegations and complaints. The hypothetical "need only include the alleged limitations of the claimant that the ALJ accepts as credible and that are supported by the evidence." Delgado v. Commissioner of Social Security, 30 Fed.Appx. 542, 548 (6th Cir. 2002).

---

[2]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

In this case, plaintiff argues that the hypothetical was inaccurate because it failed to incorporate all of his limitations. Plaintiff's argument that the hypothetical was inaccurate is entirely dependent on his arguments that ALJ erred in assessing his credibility.

At the hearing, plaintiff testified that he previously worked as a fiber optic cable technician (Tr. 379), but he had to quit after he injured his back and shoulder on the job. (Tr. 381) Plaintiff has been working been working part-time as a minister since 1996. (Tr. 379) According to plaintiff, he goes to church twice a week for no more than two hours each time. (Tr. 382) Plaintiff does drive and has no restrictions on his driver's license, but he testified that he is only able to drive short distances because of his pain. (Tr. 377-378)

Plaintiff also testified that he lives with his wife and four children, and that his children's ages are four, eleven, fifteen and twenty. (Tr. 376) Plaintiff's wife and children take care of the housework and duties like grocery shopping. (Tr. 382) The family pays others to do the yard work. (Tr. 382)

Plaintiff further testified that he is unable to work because of pain in his back and groin, as well as weakness in his right arm. (Tr. 381) Plaintiff has trouble sleeping at night because pain is so bad (Tr. 383) and he takes several naps a day, with each nap lasting 30 to 45 minutes. (Tr. 384) According to plaintiff, he experiences constant pain and that, while he takes medication, it only takes "the edge off" without eliminating the pain. (Tr. 382) The medication also makes him very drowsy, lightheaded and dizzy, in addition to causing a lack of motivation. (Tr. 382-83) Plaintiff also stated that his surgery on his shoulder took a lot of the pain away, but some still remained. (Tr. 383)

Regarding other effects of the pain, plaintiff estimated that he can only sit for 20 to 30 minutes before needing to stand or move around, and that he can only stand or walk for about half an hour before needing to get off his feet. (Tr. 384) Plaintiff also uses a cane because his right leg goes numb at times. (Tr. 385) Plaintiff testified that the heaviest weight he can lift with his left hand is a gallon of milk and that he can lift even less with his right hand. (Tr. 385) Plaintiff also testified that he has trouble climbing stairs and with pushing, pulling, or reaching with his right arm. (Tr. 385) Plaintiff further stated that his weight has gone up because he cannot exercise like he use to. (Tr. 377) According to plaintiff, he cannot exercise like he did before because of his pain and because his medications make him too tired and lazy to exercise. (Tr. 377)[3]

The ALJ determined that plaintiff's claims regarding his limitations were not totally credible. (Tr. 22) Specifically, the ALJ noted

> While the claimant may have some limitations due to pain, the severe complaints alleged by the claimant are not borne out by the evidence. MRI testing has not confirmed any chronic abnormalities in the thoracic and cervical spine. The claimant has not been recommended for surgery. On more than one occasion it was felt that the claimant was attempting to exaggerate his symptoms. He is able to work part time as a minister at a level close to substantial gainful activity and did not appear to be in pain at the time of the hearing. There is no indication that plaintiff cannot work within certain restrictions. [Tr. 20]

An ALJ's findings regarding the credibility of the applicant "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's

---

[3]Part of the plaintiff's testimony at the hearing before the ALJ (Tr. 386) is missing from the administrative record. Neither party in this case mentions the missing page or discusses the subject of plaintiff's missing testimony.

demeanor and credibility." Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997). However, credibility assessments are not insulated from judicial review. Despite the deference due, such a determination must nevertheless be supported by substantial evidence. Walters, 127 F.3d at 531. With regard to allegations of disabling pain, the regulations provide that a claimant's statements regarding her "pain or other symptoms will not alone establish that [she is] disabled[.]" 20 C.F.R. § 404.1529(a); see also Walters, 127 F.3d at 531. Rather, "there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence...would lead to a conclusion that you are disabled." 20 C.F.R. § 404.1529(a).

As noted by the ALJ, plaintiff's testimony is not supported by the medical evidence found in the record. The medical evidence, including plaintiff's MRIs and arthroscopic shoulder surgery (Tr. 257-260, 367-369), displays the existence of plaintiff's impairments, but the existence of the impairments is not in doubt and was accepted by the ALJ in forming plaintiff's RFC. (Tr. 22-23) What is in dispute is how extensive plaintiff's impairments are and the effect they have on plaintiff's ability to work.

With respect to the effect of plaintiff's impairments, the medical sources provide little corroboration for plaintiff's testimony. In October 2003, Dr. Michael G. Sperl, who treated plaintiff in 2003 and 2004, merely restricted plaintiff "in terms of avoiding repetitive bending, twisting as well as lifting of weights no greater than 25 pounds." (Tr. 231) In December 2003, Dr. Sperl set the same level of restrictions. (Tr. 228) Likewise, the Physical RFC assessment performed on February 25, 2004 also conflicts with the plaintiff's testimony regarding plaintiff's

limitations. (Tr. 210-217) Dr. Gavin Awerbuch treated plaintiff in 2004 and 2005 and his notes provide some evidence that plaintiff was in great pain (Tr. 346-354, 356, 361-362). However, it does not appear that Dr. Awerbuch ever articulated any specific restrictions plaintiff has or expressly confirmed plaintiff's testimony. On April 19, 2005, Dr. Jerome Ciullo, the doctor who treated plaintiff for plaintiff's shoulder problems, noted that, while plaintiff was in some pain, there was significant improvement. (Tr. 270) Moreover, the limitations set by Dr. Ciullo were consistent with the RFC determination made by the ALJ, with the exception of the amount of weight plaintiff could lift. (Tr. 23, 270)

Moreover, some medical sources in the record expressly questioned plaintiff's credibility and, therefore, provide support for the ALJ's credibility determination. (Tr. 19) For example, on November 6, 2003, Tanya Ruddy, a physical therapist, noted that plaintiff demonstrated "significant abnormal illness behavior/guarding throughout the evaluation" (Tr. 143), and, about two weeks later, Ruddy wrote that she could not explain his subjective reports of pain. (Tr. 141) At the end of December 2003, Ruddy wrote that he "appears to be embellishing his symptoms." (Tr. 130) Similarly, in January 2004, plaintiff underwent a functional capacity evaluation and Ann Opczynski, the occupational physical therapist, documented numerous inconsistencies of performance and concluded that plaintiff did not give maximum consistent effort in the tests given. (Tr. 157) The state agency physician performing plaintiff's physical RFC assessment found that plaintiff was only "partially credible." (Tr. 215) Plaintiff does cite to times where medical sources found him cooperative and truthful (Tr. 117, 127), but the inconsistency still provides support for the ALJ's credibility determination.

Additionally, as noted by the ALJ (Tr. 19), plaintiff's conservative treatment and his acceptance of that treatment weakens his credibility. An ALJ considers use of medication and other treatment when evaluating credibility. 20 C.F.R. § 404.1529(c)(3)(iv)-(v). In this case, Dr. Sperl recommended, in light of plaintiff's September 2003 MRI, that "treatment should be conservative in nature in terms of a continued home exercise program" (Tr. 233). Similarly, on October 8, 2003, Dr. Sperl noted that plaintiff is not a surgical candidate. (Tr. 231) In December 2003, Dr. Sperl recommended that plaintiff continue with his "present home conservative regimen of exercises." (Tr. 226) On plaintiff's initial visit to Dr. Awerbuck, Dr. Awerbuck "suggested trials of Lidoderm, Flexeril, therapeutic spa and a TENS unit." (Tr. 252) At other times, Dr. Awerbuck recommended facet injections, physical therapy, and massages. (Tr. 349-353)

Finally, the ALJ relied upon the fact that plaintiff worked a part time job as a minister in making his credibility determination. (Tr. 19) In his brief, plaintiff correctly notes that the job was part time and that the ALJ also concluded that plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 18) Nevertheless, the ALJ did not rely solely on the existence of the minister job while making the credibility determination and, to the extent the job shows plaintiff being active in his daily life to an extent contrary to the rest of his testimony, it supports the ALJ's findings.

Giving deference to the ALJ's position to observe plaintiff's testimony, as well as the support in the medical record for plaintiff's lack of credibility, substantial evidence exists to support the ALJ's credibility determination. Plaintiff's testimony is not corroborated by medical opinions, the history and course of his treatment, or his activities. A plaintiff's statements

regarding his pain or other symptoms are insufficient by themselves to establish that the plaintiff is disabled, and in this case the ALJ had substantial evidence to reject plaintiff's statements regarding the effects of his impairment on his ability to work.

## V.  Conclusion

For the reasons stated above, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that plaintiff's motion for summary judgment be **DENIED**, and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan  
Virginia M. Morgan  
United States Magistrate Judge

Dated: March 4, 2008

---

## PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on March 4, 2008.

s/Jane Johnson  
Case Manager to  
Magistrate Judge Virginia M. Morgan